UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER JAMES,<br><br>Defendant. | 5:19-CR-50167-08-KES<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL |

    Defendant, Christopher James, filed a Rule 29 motion for judgment of acquittal after a jury found him guilty on September 7, 2021, of one count of conspiracy to distribute a controlled substance as charged in the superseding indictment. Docket 447. A jury also found that this conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket 435. The United States opposes the motion. Docket 458. For the following reasons, the court denies James's motion.

## BACKGROUND

    In a superseding indictment, a grand jury charged James with one count of conspiracy to distribute a controlled substance. Docket 88. A jury trial began on August 31, 2021. At the close of evidence, before the jury began deliberating, James made an oral motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. The United States orally opposed the motion, and the court denied James's motion for judgment of

acquittal. The jury began deliberating and returned a verdict of guilty on September 7, 2021. Docket 435.

## DISCUSSION

### I.     Legal Standard

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)). The Rule 29 standard is " 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). "[T]he district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

## II. Whether Sufficient Evidence Exists to Sustain the Guilty Verdict

A jury found James guilty of one count of conspiracy to distribute a controlled substance and that this conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket 435. This charge required the United States to prove beyond a reasonable doubt that there was an agreement to distribute a controlled substance, that James intentionally joined this agreement, and that at the time he did so, James knew the purpose of the agreement. *See United States v. Campbell*, 986 F.3d 782, 804 (8th Cir. 2021). The United States also had to prove beyond a reasonable doubt that the conspiracy involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In his motion for acquittal, James does not dispute the sufficiency of the evidence relating to the existence of the conspiracy or the amount involved. He argues only that the government failed to meet its burden in demonstrating that "he had the requisite intent to commit [c]onspiracy." Docket 448 at 1.

Based on testimony from multiple witnesses and several exhibits, a reasonable jury could have found that James intentionally joined the agreement to distribute methamphetamine and that at the time he did so, he knew the purpose of the agreement. One witness, Thomas Gamage, testified that he bought methamphetamine from Edward Lamont Martin to sell to others, and Gamage recorded several of his encounters with Martin. In one recording, the two discussed a package of methamphetamine sent to Martin

from his cousin, Christopher James, who lived in Las Vegas, and that this package needed to last them for some time because James was about to travel to Puerto Rico. Exhibit 47; Draft Trial Transcript Vol. II at 17. The defendant himself introduced evidence that a few days after this call was recorded, James traveled to Puerto Rico. *See* Docket 437 at 24. Gamage also recorded a phone conversation that he overheard between Martin and James during which James confirmed that a package of methamphetamine was on its way to Martin. Exhibit 48; Vol. II at 14. Gamage sent money to James in advance of a package of methamphetamine being sent to Rapid City. *See* Exhibit 44; Volume II at 25-27. Martin confirmed the recipient's name for Gamage's money transfer on a phone call with an individual Gamage understood to be James. *Id.* Photographs of the receipts from this transaction identified James as the recipient. Docket 445 at 35-36.

Another witness, Sara Skinner, testified that Martin had identified James to her as his supplier of methamphetamine, that she overheard phone conversations between Martin and James where they discussed Martin sending money to James, and that a few days after Martin would send this money, a package would arrive that contained methamphetamine. Vol. I at 45-46. The government introduced evidence that the delivery status of some of these packages was tracked by a cell phone associated with James's account. Exhibit 16; Vol. II at 181-89. Skinner further testified that she accompanied Martin on multiple occasions to Walmart and Western Union to send money transfers and to UPS to ship packages containing cash for the purpose of paying James for

4

methamphetamine. Vol. I at 47-48, 52. She also testified that she witnessed several other people send money to James on Martin's behalf. *Id.* at 52. As demonstrated by records from Walmart, Western Union, and UPS, money transfers were often sent from Rapid City to Las Vegas shortly before a package would be sent from Las Vegas to Rapid City. Docket 445 at 7-9, 11-12; Vol. II at 155,158, 167-69, 174-75. A package sent via the United States Postal Service from James's address to Skinner's address and intercepted by law enforcement contained methamphetamine. Exhibits 54, 56; *See* Vol. II at 94, 107, 109.

James argues that this is not sufficient evidence because in his own testimony he "explain[ed] every piece of evidence given by the [g]overnment that would link [him] to this case." Docket 448 at 5. The explanations offered in James's testimony included that (1) he was in California on the day that one of the money transfers sent to him was picked up in Las Vegas; (2) the money he was receiving from Martin, and from others on Martin's behalf, was child support for Martin's child who was living with James; (3) Keith Giddens, who is Martin's brother and was living with James during this time period, was the one using James's phone; and (4) the money transfers introduced into evidence totaled an amount less than the value of the quantity of methamphetamine that had been shipped to Rapid City. *Id.* at 3-4.

According to James, this testimony was "undisputed" and "was not impeached or discredited in any fashion," and thus "shall be considered credible." *Id.* at 3, 6. But portions of James's testimony were directly

5

contradicted by the testimony of other witnesses, namely Thomas Gamage and Sara Skinner, who both testified that Martin, and others on his behalf, were sending money to James not for child support, but in exchange for shipments of methamphetamine. Sara Skinner also testified that Martin sometimes sent cash to James in UPS packages, which would account for any difference between the money transferred and the value of that quantity of methamphetamine. Because credibility determinations are for the jury to decide, *see Baker*, 367 F.3d at 797, the jury was free to believe the testimony of these witnesses over James's testimony, and to entirely disregard James's testimony about being in California on a particular day and about who was using his phone.

James argues that there is "a much stronger tie between Martin and Giddens as they were brothers and," according to James, "Giddens was in possession of the phone." Docket 448 at 7. But "the government's case need not rule out every reasonable hypothesis except guilt," as long as there is "an interpretation of the evidence that would allow a reasonable minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015) (cleaned up). The court viewed the evidence presented at trial and concludes that a reasonable jury could have found beyond a reasonable doubt that James was guilty of conspiracy to distribute a controlled substance.

## CONCLUSION

Defendant's Rule 29 motion is denied. A reasonable jury could have found James guilty beyond a reasonable doubt based on the evidence presented at trial. Thus, it is

ORDERED that defendant's Rule 29 motion (Docket 447) is denied.

Dated November 30, 2021.

                                        BY THE COURT:

                                        /s/ *Karen E. Schreier*
                                        KAREN E. SCHREIER
                                        UNITED STATES DISTRICT JUDGE